**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NATASHA ST. ONGE, | |
| *Plaintiff,* | Civil Action No. _____ |
| v. | **COMPLAINT** |
| CURRY COLLEGE and NYSHA SANCHEZ, | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

Plaintiff Natasha St. Onge, ("Plaintiff" or "Ms. St. Onge"), by her attorneys Nesenoff & Miltenberg, LLP, and Audette, Audette, & Violette, as and for her Complaint, respectfully alleges as follows:

## THE NATURE OF THIS ACTION

1.    Curry College ("Defendant Curry" or "Curry" or "the College") purports to be an institution whose "mission is to educate and graduate students prepared to engage in successful careers and active citizenship with a global perspective" and which seeks to "mentor and empower our students, building meaningful relationships that inspire them to achieve their ambitions."

2.    In direct contrast to these promises, Curry failed to educate, mentor, or empower its students when Plaintiff Natasha St. Onge, a then freshman student athlete, became a victim of a senseless assault.

3.    Ms. St. Onge repeatedly communicated fears about her safety to Curry College officials, including notifying its administrators of prior instances where her former roommate, Defendant Nysha Sanchez ("Defendant Sanchez" or "Sanchez"), threw a chair in her direction, and ransacked the dorm room in Ms. St. Onge's presence during which she went through Ms. St.

1

Onge's personal belongings. Despite Curry's knowledge of Ms. Sanchez's harmful conduct, the

College failed to take any action or implement any preventative measures, which resulted in an

assault that left Ms. St. Onge severely injured. As a result of the assault, Ms. St. Onge has endured

several surgeries that have permanently impacted her ability to move, ended her career as a student

athlete, substantially delayed her achievement of a college degree, and caused significant financial

harm.

   4.   Accordingly, Plaintiff brings this action for violations of Massachusetts state law,

together with any and all claims which can be reasonably inferred from the facts as set forth herein.

## THE PARTIES

   5.   Plaintiff Natasha St. Onge is a natural person, citizen of the United States, and

resident of the town of Tiverton in the State of Rhode Island, in the County of Newport. Ms. St.

Onge matriculated at Curry College in the Fall of 2017, with an anticipated graduation date of

Spring 2021. During the events described herein, Ms. St. Onge was enrolled as a full-time student

at Curry College.

   6.   Upon information and belief, Defendant Curry College is a private college located

in the town of Milton in the Commonwealth of Massachusetts.

   7.   Upon information and belief, Defendant Nysha Sanchez, is a resident of the

Commonwealth of Massachusetts. At all relevant times, Defendant Sanchez was enrolled as a full-

time student at Curry College. Upon information and belief, Defendant Sanchez is still enrolled as

a student at Curry College.

**JURISDICTION AND VENUE**

8.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of costs and interests, and is sufficient to establish jurisdiction.

9.      This Court has personal jurisdiction over Defendant Curry on the grounds that it conducts business within the Commonwealth of Massachusetts.

10.     This Court has personal jurisdiction over Defendant Sanchez on the grounds that she resides in the Commonwealth of Massachusetts.

11.     At all relevant times, the actions and events discussed herein transpired within the Commonwealth of Massachusetts.

12.     Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391 because Curry College is considered to reside in this judicial district.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

A.   *The Contract Between Plaintiff and the College*

13.     Ms. St. Onge, a bright young student athlete, matriculated to Curry College in the Fall of 2017, with an anticipated graduation date of Spring 2021. Upon matriculation, Ms. St. Onge resided in student housing on the campus of Defendant Curry.

14.     Upon enrollment, Curry provided Plaintiff with a copy of their Student Handbook (the "Handbook"). It is well settled in Massachusetts that the relationship between a student and a college or university is contractual in nature, with the terms of the contract being established by the student handbook, circulars, bulletins, and other related policies. *See Doe v. W. New England Univ.,* 228 F. Supp. 3d 154, 169 (D. Mass. 2017); *Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561, 593 (D. Mass. 2016); *see also Doe v. Harvard Univ.*, 462 F. Supp. 3d 51, 65 (D. Mass. 2020).

15.     The terms of the contact are governed by the "reasonable expectations" test, in which a court is to "ask 'what meaning the party making the manifestation, the university, should reasonably expect the other party [the student,] to give it.'" *Walker v. Pres. & Fellows of Harvard Coll.,* 840 F. 3d 57, 61 (1st Cir. 2016) (quoting *Cloud v. Trustees of Bos. Univ.,* 720 F.2d 721, 724 (1st Cir. 1983)); *see also Doe v. Harvard Univ.*, 462 F. Supp. 3d at 65.

16.     Thus, in consideration for Plaintiff's payment of tuition and attendance at the College, Curry assured Plaintiff that it would comply with its policies and procedures.

17.     Colleges and universities owe students a duty of care when creating and enforcing policies.

18.     The Handbook contains the Curry College Code of Conduct (the "Code"). Curry, pursuant to the Code, "is a community that holds its members to high expectations" that are "embodied throughout the Code of Conduct, valuing integrity, civility, acceptance, and accountability."

19.     Pursuant to the Code, the "purpose of the Student Conduct process seeks to provide community members with an educational, respectful, and safe environment conducive to academic and personal success for the individual and greater community."

20.     The Code strictly prohibits, "physical abuse, verbal abuse, threats, intimidation, coercion, stalking and/or other conduct, which threatens or endangers the health or safety of any person."

21.     "The damage/destruction of property, misuse, or defacement or property by acts committed deliberately or in reckless disregard of possible harm to property is prohibited."

22.     Harassment is defined in the Code as including, but not limited to, "conduct whether verbal, visual, written, electronic, physical or otherwise, that is sufficiently severe,

persistent or pervasive so that it adversely affects, or has the purpose or logical consequence of interfering with an individual's education or create an intimidating, hostile or offensive environment, is prohibited."

23.     The Code also contains the Harassment, Discrimination, and Sexual Misconduct Policy (the "Harassment Policy").

24.      The Harassment Policy states that "individuals may not be discriminated against in the terms and conditions of their employment or academic program or subject to harassment in the workplace or academic environment."

25.     A student conduct process results from any potential violations. Interim measures, such as a no contact order or reassignment of courses or housing, can be imposed for protection.

B.  *Plaintiff's Communications with the College Prior to the Assault*

26.     Ms. St. Onge resided in student housing at Defendant Curry College with an assigned roommate, Defendant Sanchez, in a two-person dormitory room.

27.     On several occasions during January and February 2018, Defendant Sanchez acted unusually and violently in the shared dorm room between her and Plaintiff in Plaintiff's presence.

28.     For instance, Defendant Sanchez threw a desk chair that narrowly missed Plaintiff.

29.     Upon information and belief, prior to the incident on February 26, 2018 (the "Assault"), Ms. St. Onge had been in regular contact with Assistant Vice President for Student Affairs at the College, Lisa MacDonald ("Ms. MacDonald").

30.     On several occasions prior to the Assault, Ms. St. Onge communicated to Defendant Curry College and its agent/employee Ms. MacDonald, as well as other agents of the College, her concerns regarding the aforementioned behavior of Defendant Sanchez, including the throwing of the desk chair. Plaintiff repeatedly expressed concerns for her safety.

31.     Despite full knowledge and reports of these violations of the Code and Harassment Policy, as well as St. Onge's fear of what action Defendant Sanchez may take next, Defendant Curry failed to investigate or intervene.

C. *The Assault and Damages*

32.     On or around February 26, 2018, while Ms. St. Onge attempted to help her roommate during an emotional breakdown, Defendant Sanchez kicked Ms. St. Onge in her right knee.

33.     Ms. St.  Onge has suffered and will continue to suffer significant damages as a result of: (i) Curry's failure to investigate or intervene; and (ii) the assault of Defendant Sanchez.

34.     Ms. St. Onge immediately had to leave Curry College due to the physical and emotional damage she suffered, as well as the unsafe environment she then inhabited.

35.     Ms. St. Onge has sustained such severe permanent physical injuries that she has endured several surgeries to help repair the damage, and continues to undergo treatment for this injury.

36.     Ms. St. Onge has expended and will continue to expend great sums of money for the medical care and treatment of said injuries.

37.     Her career as a college athlete is likely finished due to the injuries sustained.

38.     Ms. St. Onge suffers from severe emotional distress and anxiety as a result of Defendant Curry's failure to take any action to investigate or implement any preventative measures and Defendant Sanchez's assault.

39.     As a result of the injuries both physical and emotional, and the several surgeries and recovery periods she had to endure, Ms. St. Onge has suffered undue delay to her education. She will not complete her degree at Curry or any other institution in the time period expected.

40.     Due to the unexpected delay in her education, Ms. St. Onge will not enter the work force on her expected graduation date, resulting in a loss of earnings and wages.

## COUNT I – NEGLIGENCE
### Mass. Gen. Laws ch. 260, § 2A
*Against Defendant Curry*

41.     Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

42.     In Massachusetts, a Plaintiff must demonstrate that: (1) the defendant owed a duty, (2) the defendant breached that duty, (3) a causal connection exists between the breach of duty and (4) plaintiff's suffering of damages. *Adams v. Cong. Auto Ins. Agency, Inc.*, 65 N.E.3d 1229, 1234 (2016).

43.     In implementing its various policies and procedures, articulated in the Handbook, Code, and Harassment Policy, Defendant Curry owed a common law duty to exercise reasonable care, with due regard for applying Curry's policies fairly, appreciating the severity of the consequences, and in consideration of Ms. St. Onge's reports in violation of the Code and Harassment Policy.

44.     Through the acts set forth above, Curry breached its duty by carelessly disregarding Ms. St. Onge's good faith reports of harassment, fear of physical safety, and reports of violent acts by her roommate, Defendant Sanchez.

45.     Specifically, when Ms. St. Onge reported the violent acts to Ms. MacDonald, an employee and agent of the College, the College took no action whatsoever.

46.     A non-negligent institution of higher education would have launched an investigation and put into place interim protective measures for safety.

47.     As a direct and proximate result of the above conduct, Ms. St. Onge has sustained tremendous damages, including, without limitation, extreme physical, emotional, and psychological distress and damage, pain and suffering, loss of career and educational opportunities, past and future economic injuries, monetary damages, and other direct and consequential damages.

## COUNT II – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### Mass. Gen. Laws ch. 260, § 2A
*Against Defendant Curry College*

48.     Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

49.     Defendant Curry's conduct, as described above, caused Plaintiff mental anguish and emotional distress.

50.     Plaintiff's mental anguish and emotional distress were severe enough that they might result in bodily harm or illness. She has suffered from severe anxiety and a lack of sleep as a result of the harrowing assault.

51.     Defendant Curry's conduct caused Ms. St. Onge severe and substantial mental anguish and emotional distress. Due to the extreme stress Ms. St. Onge experienced, Ms. St. Onge suffers from anxiety which impacts her daily life.

52.     As a direct and proximate result of the above conduct, Ms. St. Onge has sustained tremendous damages, including, without limitation, extreme physical, emotional, and psychological distress and damage, pain and suffering, loss of career and educational opportunities, past and future economic injuries, monetary damages, and other direct and consequential damages.

## COUNT III – BREACH OF CONTRACT
*Against Defendant Curry College*

53.     Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

54.     It is well settled in Massachusetts that the relationship between a student and a college or university is contractual in nature, with the terms of the contract being established by the student handbook, circulars, bulletins, and other related policies. *See Doe v. W. New England Univ.,* 228 F. Supp. 3d 154, 169 (D. Mass. 2017); *Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561, 593 (D. Mass. 2016); *see also Doe v. Harvard Univ.*, 462 F. Supp. 3d 51, 65 (D. Mass. 2020).

55.     Plaintiff applied to and enrolled at Curry College, and paid associated fees and expenses. Plaintiff did so in reliance on the understanding and with the reasonable expectation that Curry would implement and enforce the provisions and policies set forth in its official publications, including the Handbook, Code, and Harassment Policy.

56.     An express contract, or alternatively, a contract implied in law or in fact, was formed between Plaintiff and Defendant Curry.

57.     The contract contained the implied covenant of good faith and fair dealing. The contracts also implicitly guaranteed that the College would implement the contracts with basic fairness.

58.     Based on the aforementioned facts and circumstances, Defendant Curry breached the express and/or implied agreement(s) with Plaintiff and the covenant of good faith and fair dealing contained therein.

59.     Defendant Curry breached the contract with Ms. St. Onge in the following ways, without limitation:

    a.  Failing to investigate Ms. St. Onge's complaint of violence by Defendant Sanchez;

b.  Failing to implement any interim measures despite Ms. St. Onge's clear communications of prior violence on the part of Defendant Sanchez; and

c.  Failing to provide an environment free from harassment, which is prohibited by Curry's Harassment Policy.

60.     Defendant Curry's breach proximately caused Plaintiff to sustain damages including but not limited to, extreme physical, emotional, and psychological distress and damage, pain and suffering, loss of career and educational opportunities, past and future economic injuries, monetary damages, and other direct and consequential damages.

## COUNT IV – BREACH OF THE CONVENANT OF GOOD FAITH AND FAIR DEALING
### *Against Defendant Curry College*

61.     Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

62.     Defendant Curry had a duty, either under an express or implied contract or as a matter of common law, to ensure that the Plaintiff's reports of violations of the Handbook, Code, and Harassment Policy, were promptly examined in good faith and with basic fairness.

63.     Defendant Curry breached this duty of good faith and basic fairness by, without limitation:

a.  Failing to examine and investigate Plaintiff's allegations of violence against her;

b.  Failing to provide an environment free from harassment in violation of the Harassment Policy;

c.  Failing to give the required attention to Ms. St. Onge's complaint against Defendant Sanchez; and

d.  Failing to provide any interim measures as a result of Plaintiff's allegations of violence against her.

64.     In failing to act in compliance with the College's policies, Defendant deprived Plaintiff of a reliable and impartial investigation process, with interim protective measures, as she is guaranteed by the various policies at the College.

65.     Defendant Curry's breach of their duty proximately caused Plaintiff to sustain damages including but not limited to, extreme physical, emotional, and psychological distress and damage, pain and suffering, loss of career and educational opportunities, past and future economic injuries, monetary damages, and other direct and consequential damages.

**COUNT V – CIVIL ASSAULT**
**Mass. Gen. Laws ch. 260, § 4**
*Against Defendant Sanchez*

66.     Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

67.     In order to claim civil assault, plaintiff must demonstrate that defendant acted "intending to cause a harmful or offensive contact" or "[acted to create] an imminent apprehension of such contact" and that Plaintiff was "thereby put in such imminent apprehension." *Diaz v. Devlin,* 229 F. Supp. 3d 101, 111 (D. Mass. 2017).

68.     Defendant Sanchez intended to harm Plaintiff when Defendant Sanchez kicked Ms. St. Onge in the right knee, constituting harmful or offensive contact.

69.     Plaintiff was put in such imminent apprehension upon being assaulted by Defendant Sanchez. A harmful contact resulted from Defendant Sanchez's actions upon Plaintiff.

70.     Defendant Sanchez directly caused substantial physical damages to Plaintiff St. Onge as a result of the assault.

71.     As a direct and proximate cause of Defendant Sanchez's actions, Plaintiff sustained damages including but not limited to, extreme physical, emotional, and psychological distress and

damage, pain and suffering, loss of career and educational opportunities, past and future economic injuries, monetary damages, and other direct and consequential damages.

## COUNT VI – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### Mass. Gen. Laws ch. 260, § 2A
*Against Defendant Sanchez*

72.     Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

73.     Defendant Sanchez's conduct, as described above, caused Plaintiff mental anguish and emotional distress.

74.     Plaintiff's mental anguish and emotional distress were severe enough that they might result in bodily harm or illness. She has suffered from severe anxiety and a lack of sleep as a result of the harrowing assault.

75.     Defendant Sanchez's conduct caused Ms. St. Onge severe and substantial mental anguish and emotional distress. Due to the extreme stress Ms. St. Onge experienced, Ms. St. Onge suffers from anxiety which impacts her daily life.

76.     As a direct and proximate cause of Defendant Sanchez's actions, Plaintiff sustained damages including but not limited to, extreme physical, emotional, and psychological distress and damage, pain and suffering, loss of career and educational opportunities, past and future economic injuries, monetary damages, and other direct and consequential damages.

## PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

(i) on the first cause of action for negligence against Defendant Curry, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation,

damages to physical well-being, physical injuries and damages, past and future economic losses, loss of educational opportunities, loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements;

(ii) on the second cause of action for negligent infliction of emotional distress against Defendant Curry, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, physical injuries and damages, past and future economic losses, loss of educational opportunities, loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements;

(iii)on the third cause of action for breach of contract against Defendant Curry, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, physical injuries and damages, past and future economic losses, loss of educational opportunities, loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements;

(iv)on the fourth cause of action for breach of the implied covenant of good faith and fair dealing against Defendant Curry, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, physical injuries and damages, past and future economic losses, loss of educational opportunities, loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements;

(v) on the fifth cause of action for civil assault against Defendant Sanchez, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, physical injuries and damages, past and future economic losses, loss of educational opportunities, loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements; and

13

(vi)on the sixth cause of action for negligent infliction of emotional distress against Defendant Sanchez, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, physical injuries and damages, past and future economic losses, loss of educational opportunities, loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## **JURY DEMAND**

Plaintiff herein demands a trial by jury of all triable issues in the present matter.

**Dated:** **Boston, Massachusetts**
**February 25, 2021**

**Respectfully submitted,**

| | |
|---|---|
| **NESENOFF & MILTENBERG, LLP** | **AUDETTE, AUDETTE & VIOLETTE** |
| *Attorneys for Plaintiff Natasha St. Onge* | *Attorneys for Plaintiff Natasha St. Onge* |
| | |
| By: /s/ *Tara J. Davis* | By: /s/ *Kathryn E. Fuoco* |
| | |
| **Andrew T. Miltenberg, Esq.** | **Robert P. Audette, Esq.** |
| *(pro hac vice pending)* | *(pro hac vice pending)* |
| **363 Seventh Avenue, Fifth Floor** | **Kathryn E. Fuoco (BBO No. 704446)** |
| **New York, New York 10001** | **35 Highland Avenue** |
| **(212) 736-4500** | **East Providence, Rhode Island 02914** |
| **amiltenberg@nmllplaw.com** | **(401) 371-9555** |
| | **raudette@aavlawfirm.com** |
| **Tara J. Davis (BBO No. 675346)** | **kfuoco@aavlawfirm.com** |
| **Regina M. Federico (BBO No. 700099)** | |
| **101 Federal Street, Nineteenth Floor** | |
| **Boston, Massachusetts 02110** | |
| **(617) 209-2188** | |
| **tdavis@nmllplaw.com** | |
| **rfederico@nmllplaw.com** | |